JUDGE HERB ROSS (Recalled)

## UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF ALASKA
605 West 4th Avenue, Room 138, Anchorage, AK 99501-2253 —   (Website: www.akb.uscourts.gov)
Clerk's Office:  907-271-2655 (1-800-859-8059 In-State) — Judge's Fax:  907-271-2692

**Filed On
8/2/10**

In re

MICHAEL CROPLEY LASHBROOK and
SANDRA JOY LASHBROOK,

Debtor(s)

Case No. A09-00484-HAR
In Chapter 7

**MEMORANDUM DENYING MOTION
UNDER FRBP 9023**

## TABLE OF CONTENTS                                    Page

1. **Debtors' Motion to Alter Order Denying Motion for Reconsideration** . . . . . . . . . . . . . . . . . . . 1

2. **"Newly Discovered Evidence": the July 14 and 15, 2010 E-Mails** . . . . . . . . . . . . . . . . . . . . . . 2

3. **"Newly Discovered Evidence": Exhibits 2 - 31** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

4. **The Debtors' Memorandum Does Not Support Altering the Court's Order** . . . . . . . . . . . . . . . 5

5. **Anticipating a Modification of Exemptions to Make a Claim Under AS 09.38.030(b)** . . . . . . 7

### 1. Debtors' Motion to Alter Order Denying Motion for Reconsideration

The debtors' have filed a motion to alter or amend an order denying their motion for
reconsideration.[1]  They base their motion on newly discovered evidence: (a) a July 14 and 15,
2010 e-mail exchange; and, (b) additional "new" written evidence.  The motion will be denied.

---

[1]The present FRBP 9023 motion is at Docket No. 95.  The debtors' previous motion for reconsideration
is at Docket No. 80 (asking for reconsideration of orders regarding debtors' exemptions, operation of a business,
and employment of a broker at Docket Nos. 75, 76, and 77), and the order denying the motion for
reconsideration is at Docket No. 84.

1   A FRBP 9023 motion, incorporates FRCP 59.  The court in <u>In re Covino</u>[2] stated:

2   The Court reviews this motion under the standards generally
    applicable to Rule 59 requests made on the assertion of "newly discovered
3   evidence."      There is a three-part analysis applicable to such motions: (1)
    the newly discovered evidence must have been discovered after judgment,
4   and the movant must have been excusably ignorant of the facts at the time of
    trial despite due diligence to learn about the facts of the case; (2) the
5   evidence discovered must be of a nature that would probably change the
    outcome of the case; and (3) the evidence must not be merely cumulative or
6   impeaching.

7   The court's ruling on the substantive issues regarding debtors' exemption, the operation of

8   a business by the trustee, and employment of a broker are already on appeal to the U.S. District

9   Court for the District of Alaska.[3]  For expedience, I am assuming I still have jurisdiction to address

10  the debtors' motion to alter my denial of their motion for reconsideration of the substantive

11  rulings.

12  Also for expedience, I am ruling without waiting for the trustee to file a response.  It was

13  difficult to read and understand the Lashbrooks' motion, but having done so I do not feel the

14  trustee's response is necessary.

15  2.  <u>**"Newly Discovered Evidence": the July 14 and 15, 2010 E-Mails**</u>

16  The debtors call Exhibit 1, copies of  July 14 and 15, 2010 e-mails between Ms. Lashbrook,

17  the trustee and Mr. Artus, "newly discovered evidence."  I find that they are not relevant to the

18  issues.  In the July 15, 2010 e-mail, Mr. Artus sent a response to the trustee (and, apparently

19  inadvertently to Ms. Lashbrook) saying "She thinks she is your mother – do as you are told!"  This

20  related to her request that the trustee send her certain reports.  On page 1 of debtors' motion, it

21  promises "relevance discussed below."

22  This apparently refers to discussion at page 8-9 of the motion where debtors argue that

23  this shows the trustee and Artus have been sexist, disrespectful, mocking, dismissive, and

24

25   [2]<u>In re Covino</u>, 241 BR 673, 679 (Bankr.D.Ida. 1999) (citation and footnote omitted).

26   [3]District court Case No. 3:10-cv-0166-HRH.

27

28  MEMORANDUM DENYING
    MOTION UNDER FRBP 9023                                                    Page 2 of 8

1  discriminatory "from day one."  This is hyperbole, but even if it is true it is not germain to merits

2  of whether the denial of debtors' motion for reconsideration should be altered.  The merits favor

3  the trustee on the real questions the court must address– is the property exempt?; should the court

4  allow the trustee to hire a broker?; should the trustee be allowed to operate the business while he

5  tries to sell the trailer park?  On these issues, the original rulings were correct.

6  3. **"Newly Discovered Evidence": Exhibits 2 - 31**

7         The other "newly discovered" evidence claimed by the Lashbrooks are represented by

8  Exhibits 2-31 to the motion.  None of them is newly discovered and the motion could be denied

9  on that basis alone.[4]  Nonetheless, since debtors are arguing their motion *pro se*, I will review the

10 exhibits anyway.

11        Many are irrelevant and a number contain admissions against interest to the debtors'

12 argument that they had orally or informally amended their filed Schedule C exemption claiming

13 $0 as the exempt amount.  None of them  actually support their argument, even giving credence to

14 the tortuous reasoning of their brief.  I will comment on each of the the exhibits:

15   ●   Exhibit 2, excerpts from Schedules, Schedule I, debtors' Statement of Intentions-
         Schedule I reflects debtors' intentions with respect to various lienholders, not the
16       trustee.  At the beginning of the case, debtors thought that the trustee would not be
         interested in the trailer park or trailers due to alleged lack of equity.
17
         Checking the box on Schedule I that "Property is claimed as exempt," as opposed to
18       the box for "Not claimed as exempt" begs the question of "how much is claimed as
         exempt?".
19
         More to the point, it is *Schedule C* relating to exemptions, not *Schedule I*, where
20       Schwab v Reilly[5] said the trustee has to look:

21            [W]e conclude that Schwab [the chapter 7 trustee] was entitled to
              evaluate the propriety of the claimed exemptions based on three, and
22            only three, entries on Reilly's Schedule C: the description of the
              business equipment in which Reilly [the debor] claimed the exempt
23            interests; the Code provisions governing the claimed exemptions; and

24  ───────────────

25       [4]In re Covino, 241 BR, at 680 (the test is not whether the evidence was known to the Lashbrooks, but
    whether if was available through the use of due diligence).

26
         [5]Schwab v Reilly, 130 S.Ct. 2652, 2663 (2010) [citations omitted]
27

28  MEMORANDUM DENYING
    MOTION UNDER FRBP 9023                                                                    Page 3 of 8

the amounts Reilly listed in the column titled "value of claimed exemption." In reaching this conclusion, we do not render the market value estimate on Reilly's Schedule C superfluous. We simply confine the estimate to its proper role: aiding the trustee in administering the estate by helping him identify assets that may have value beyond the dollar amount the debtor claims as exempt, or whose full value may not be available for exemption because a portion of the interest is, for example, encumbered by an unavoidable lien.

- Exhibits 3 and 4, e-mails with resident caretaker of trailer park  and Notice to All Tenants- The debtor's statements are consistent with the debtors' hope that the trustee would abandon the park, something the trustee has declined to do.

- Exhibit 5, e-mail from Barstow to Jeff Carney 09/02/09- Barstow wrote: "If your client intends to retain the park or possible exemptions in the property I urge you to file an amendment or make such an offer immediately."   At this time (and currently) the claim of exemption was $0.  This statement favors the trustee's interpretation of events, not the Lashbrooks.  At the time, the Lashbrooks were talking about buying the park back from the estate and they had only claimed $0 as the amount of the exhibit.

- Exhibit 6, Lashbrooks First Offer to the Trustee on 09/25/09- Irrelevant discussion that the trustee was spinning his wheels because the park would not sell for enough, and offering a compromise.

- Exhibits 7-10, e-mail traffic between Ms. Lashbrook and Jeff Carney– Irrelevant and not probative regarding the exemption issue.

- Exhibit 11, e-mail from Ms. Lashbrook with Second Offer to Barstow (10/02/09)– Contains the admission against interest: "*When I filed originally on 7/14/09, Jeff Carney and I did not apply any of our available D5 wildcard exemption amount to to the Highland Park property*[ the trailer park and trailers]*, because we it didn't look to us like there was any equity there to exempt*" [emphasis added].  This shows that long after the first § 341 meeting the debtors were *still discussing their claim of exemption in terms of 11 USC § 522(d)(5)* and trying to convince the trustee that there was no equity in the property.

Had they really made an effort to exempt the entire park, this would have been the place to make the assertion ("The whole trailer park and nine trailers are being claimed as exempt").  Since it is not a valid exemption, the trustee would have been on notice that he should file an objection.  But, he was not put on such notice by the debtors.

- Exhibit 12, e-mail from Ms. Lashbrook to Artus and Barstow (10/05/09)- Contains an admission against interest.  It talks about a "Draft of Proposed Schedule C property claimed as exempt," and gives the figure as $20,636.81.  Belies claim that she made an amend for the entire trailer park and nine trailers at the initial first meeting of creditors or that she was thinking in terms of the entire property being claimed as exempt.  The proposed draft clearly shows the Lashbrooks were thinking of claiming $10,016.74 and $10,620.07, or a total of $20,636.81, under 11 USC § 522(d)(5) for the trailer park property they proposed valuing at $350,000.

MEMORANDUM DENYING
MOTION UNDER FRBP 9023

- <u>Exhibits 13-15 is additional e-mail traffic</u>- Contain admissions against interests similar to Exhibit 12.

- <u>Exhibit 16-20 are irrelevant</u>- The Lashbrooks make tenuous analogies, attack the trustee's compliance with the US Trustee standards, etc.  None of these are relevant, or if the allegations regarding Barstow are relevant, they are matters for the U.S. Trustee, supervisor of the trustee, in the first instance.

- <u>Exhibit 21, e-mail from Ms. Lashbrook to Barstow (03/26/10)</u>-  The Lashbrooks annotate this exhibit with a handwritten statement on page 21-1:  "This is written proof that the trustee 'was notified,' even if assumed this was the first instance (which it was not)."

  In the exhibit they highlight a statement on page 21-3 that "my husband and I ***own*** Highland, and as I told you at the 341 meetings, we have from the beginning ***intended to keep it*** because it provides over 80% of our income, puts a roof over our head, and feeds our kids.  It did not have any value to the estate for when we filed, and still doesn't . . ." [emphasis in the original].

  If this is intended as proof that the debtors claimed an exemption in all the property, it comes too late and flies in the face of the earlier exhibits that I have just discussed which show that the debtors had always in the past talked in terms of § 522(d)(5) dollar limits, as well as the court's analysis of the § 341 transcripts attached to the Proceeding Memorandum of the June 30, 2010 hearing, in which the court found overwhelming evidence that the debtors made no explicit or implicit modification of the $0 exemption claimed in the schedules.[6]

  Most likely, this e-mail is the beginning of the debtors' litigation strategy, claiming that the trustee had missed the FRBP 4003(b)(1) 30 day deadline to object to the exemption under <u>Taylor v Freeland & Kronz</u>.[7]  On June 17, 2010, <u>Schwab v Reilly</u> undercut the Lashbrooks' strategy by distinguishing <u>Taylor v Freeland & Kronz</u>.

- <u>Exhibit 22-24</u> are irrelevant to the argument.

- <u>Exhibit 25, Lashbrook e-mail to Barstow, Artus, Huff and Pasco (the trustee's park manager and subsequently appointed broker) on 04/16/10</u>- This e-mail is not probative; it is litigation talk.

  At page 25-2, debtors say that they have claimed ownership of the park from the filing date, it is over encumbered, "and we fully exempted it in our schedules." They cite § 522(l) verbatim and say, in effect, "Gotcha!":  "Unfortunately, Mr. Barstow chose not to object to the Lashbrooks' exemptions.  Hence, the park is no longer property of the estate as of November 20, 2009 . . ."

---

[6]Docket No. 73.

[7]<u>Taylor v Freeland & Kronz</u>, 112 S.Ct. 1644 (1992).

MEMORANDUM DENYING
MOTION UNDER FRBP 9023

Ms. Lashbrook said she was about to file an adversary proceeding to vindicate their exemption rights in the property. Adv. No. 10-90009 was filed a few days later on April 19, 2010. The court persuaded the parties to wait until the U.S. Supreme Court ruled on <u>Schwab v Reilly</u>, which had been argued on November 3, 2009. <u>Schwab</u> was decide on June 17, 2010 adversely to the Lashbrooks interest in this case.

- <u>Exhibits 26-31</u> are irrelevant to the argument.

### 4. <u>The Debtors' Memorandum Does Not Support Altering the Court's Order</u>

The debtors torture the facts to make them fit their argument that they had made their intention clearly known, in writing and orally, that they intended to exempt the entire trailer park and nine trailers. They challenge the trustee's decision to sell the trailer park, claiming there is no equity, and challenge his choice of real estate professionals, in an attempt to hinder the process so the property will not be sold.

The plethora of documentation and excerpts of oral conversation cited by the Lashbrooks overwhelmingly support the conclusion that debtors never made a clear explicit or implicit amendment to their actual filed $0 claim of exemption under § 522(d)(5).

The property earns enough to pay its secured obligation and provide extra cash for the owner. This alone is enough justification for the trustee to believe that a buyer might be found and there is no principled reason given by the debtors why he should not be able to chose the real estate professionals in has selected.

Simply put, the controversy between the debtor and the trustee, has played out like this:

- Did the debtors have a valid argument that the trustee had missed the deadline under FRBP 4003(b) to object to the exemptions as filed so that the debtors were entitled to have an exemption for the entire value in the trailer park and nine trailers? I concluded that under <u>Schwab v Reilly</u> the trustee was not required to object to debtors' claim of exemption as filed so a deadline had not been missed. I also ruled against the debtors on their backup argument that they had implicitly or explicitly amended their claim of exemption to claim the entire trailer park and nine trailers (as opposed to the limited exemption under § 522(d)(5))so as to bring themselves within the earlier ruling in <u>Freeland v Taylor & Kronz</u>.

- Having ruled against the debtors on the exemption issue, I allowed the debtor to hire a broker to sell the assets and to operate the trailer park in the interim. The debtors arguments against these rulings are specious.

MEMORANDUM DENYING
MOTION UNDER FRBP 9023                                                                Page 6 of 8

1    Ms. Lashbrook has explained her family's plight, and it makes her dogged fight with the

2    trustee understandable.  Over the past few years she has lost a lot of her business as a licenced

3    insurance professional, specializing in the sale of long term care products, she claims due to a

4    vendetta against her.  She and her husband lost a lot of money in a failed venture to salvage a

5    faltering roadhouse on the Parks Highway.  They have lost valuable waterfront property and a real

6    estate development in the Mat-Su.  They have lost their family home.  They are living in Ms.

7    Lashbrook's former office building.  Life has not been good for them recently.  So, I understand

8    that it is particularly galling to them that the trailer park which they thought would float through

9    the bankruptcy and be abandon is now being marketed by the trustee.  But, that's his job.

10    The trailer park had been neglected by the Lashbrooks before the bankruptcy petition by

11    deferring maintenance as they poured their money into their failing ventures.  Nonetheless, she

12    calls the purchase of the trailer park "the one thing I've done right."  By that she means, it

13    supports its debt and throws off some excess cash (enough to cover 80% of her families monthly

14    needs).  She has two young children and needs cash the family support.  Not surprisingly, the fact

15    that the trailer park is something of a "cash cow" is one the things that may cause the trustee to

16    believe the park has value and could beneficially be sold to a third party.

17    The bankruptcy law is not only for debtors.  It balances the rights of debtors and creditors.

18    It allows debtors to retain some assets by virtue of property exemptions to facilitate a fresh start.

19    On the other hand, they have to surrender the rest of their property to a bankruptcy estate

20    (administered by a trustee), so it can possibly be turned into cash to be disbursed to creditors.

21    So, the trustee, William Barstow, is required to try to sell the trailer park and nine trailers

22    to pay the creditors.  He may be able to find a buyer who will pay off the real property taxes, the

23    first lien, and all or part of a large IRS lien, and hopefully even some other creditors.  There is no

24    requirement, as the Lashbrooks have suggested, that he provide the court or the debtors with

25    appraisal testimony just to make the effort to sell the property.  Appraisals are expensive and

26

27

28    MEMORANDUM DENYING
MOTION UNDER FRBP 9023                                                      Page 7 of 8

1  usually unnecessary to a trustee's decision to market estate property. The proof is in the pudding

2  – if he finds a buyer willing to pay enough, his business judgment will be vindicated.

3  5. __Anticipating a Modification of Exemptions to Make a Claim Under AS 09.38.030(b)__

4       This is in anticipation that the debtors may seek to modify their exemptions to claim the

5  state exemptions instead of the federal exemptions that they now claim.

6       I believe that the debtors have said during these proceedings that they may seek to exempt

7  the excess rental income from the trailer park and nine trailers under AS 09.38.030(b). They may

8  be relying on Judge MacDonald's decision in <u>In re Dorismae Melin</u>.[8] This was affirmed by the

9  district court.[9] Jeff Carney, the debtors' chapter 7 attorney, represented Ms. Melin. In <u>Melin</u>,

10  Judge MacDonald held that the debtor was not limited to a one-time monthly payment of the

11  proceeds of the note for an exemption under AS 09.38.030(b).

12       In the present case, I would have to determine if the <u>Melin</u> decision, which involved

13  payments from a promissory note, would apply to the continuing rental income from the trailer

14  park and nine trailers, or whether the case could be distinguished.

15       DATED: August 2, 2010

16

17                           /s/ Herb Ross
                              HERB ROSS
                    U.S. Bankruptcy Judge

18

19  <u>Serve</u>:
Sandra Lashbrook, *pro se* debtor, 3750 E. Steven Drive, Wasilla, AK 99654

20  Michael Lashbrook, *pro se* debtor, 3750 E. Steven Drive, Wasilla, AK 99654
Willilam Artus, Esq., for William Barstow, trustee

21  William Barstow, trustee
Jeff Carney, Esq. (courtesy copy)

22  Kay Hill, Asst. US Trustee
Cheryl Rapp, Deputy Clerk                                            D7378

23         08/02/10

24

25  [8]<u>In re Dorismae Melin</u>, 6 ABR 310 (Bankr. D. Alaska 1999), A99-00006-DMD at Docket No. 37, dated
January 5, 2000.

26

27  [9]*See*, Docket No. 50 in Case No. A99-0006-DMD.

28  MEMORANDUM DENYING
MOTION UNDER FRBP 9023                                 Page 8 of 8