JUDGE HERB ROSS (Recalled)

## UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF ALASKA
### 605 West 4th Avenue, Room 138, Anchorage, AK 99501-2253 —  (Website: www.akb.uscourts.gov)
### Clerk's Office: 907-271-2655 (1-800-859-8059 In-State) — Judge's Fax: 907-271-2692

> **Filed On**
> **6/3/11**

Case No. A09-00484-HAR
In Chapter 7

In re

MICHAEL CROPLEY LASHBROOK and
SANDRA JOY LASHBROOK,

Debtor(s)

**MEMORANDUM DECISION DENYING
DEBTORS' OBJECTION TO TRUSTEE'S
FEES**

The debtors have objected to the trustee's fee request of $24,560.79 and costs of $834.22 on various grounds.[1]  I have reviewed the objection and deny it.  ***The trustee should lodge a proposed order approving his Trustee's Final Report.***

After this memorandum was substantially drafted, but before it was filed, the trustee filed a rebuttal, which included a time sheet.  The trustee's explication of the history of this case is much more balanced and in line with the court's view of the case than is the Lashbrooks' version of events.[2]

I will rule without a hearing, since the objection is similar to many the debtors have filed in this case challenging the trustee, his attorney and his real estate professionals.

And, I will consider the debtors' loquacious memorandum by addressing each segment in sequence.

**"SUMMARY OF ARGUMENT" (pages 1-4 of DN 180)** - The debtors argue that because the distribution will only pay $34,946.85 of the IRS secured debt on the trailer park – the secured

---

[1] The trustee's request is in his *Trustee's Final Report (TFR)*, Docket No. 177, at page 2.  The debtors' objection is at Docket No. 180.

[2] *Trustee's Statement of Case Administration*.  Docket No. 182, filed June 2, 2011.

claim is probably $50,000, more or less – the trustee and his attorney abjectly failed in their fiduciary duties.  The debtors argue that the trustee orchestrated the case to maximize fees at the expense of the creditors.

I have previously indicated this is an unlikely case for such a conspiracy theory.  The property involved a trailer park and some aging trailers located on the Kenai Peninsula, more than 100 miles from the trustee's base of operations in Anchorage.  It suffered from deferred maintenance or dilapidation because the debtors had used their assets prior to filing trying, unsuccessfully, to save other projects.  Far from being a plum, any trustee would have seen the administration of these assets as an unwelcome burden.

Yet the trailer park had cash flow.  The debtors undervalued them, claiming they were worth only $201,200, subject to $318,421.15 in secured debt[3]  The trustee smelled a rat and investigated to see if there was more than $200,000 in value.

This unleashed a continuing, scorched earth battle by the debtors, challenging the trustee at virtually every step.  They challenged his right to sell, his choice of real estate broker, his performance, etc.  Each step of the way provoked a lengthy, unfair, biased brief from the debtors, the latest of which I am now addressing.

For example, the debtors argue the trustee could have sold the property back to them for $100,000 pursuant to a November 25, 2009 offer from them (Exhibit 1 to Docket No. 180).  The $100,000 was to pay the IRS and other junior liens, as well as administrative expenses.   They point out a later sale for $50,000 to the debtors will only pay $35,000 to the IRS, but give the trustee and his attorney substantial fees.

Debtors have conveniently forgotten that almost as soon as they had made the $100,000, they concluded that the trustee had missed a critical objection date under FRBP 4003(b)(1) and

---

[3]Docket No. 1, Schedule A.

MEMORANDUM DECISION DENYING
DEBTORS' OBJECTION TO TRUSTEE'S FEES

1  filed an adversary proceeding to establish this.[4]  Long story short, the Supreme Court ruled against

2  that argument in June 2010 in Ransom v. Hamner.  The trustee, in the interim lost about 8-9

3  months of marketing.

4        In a transcript of a hearing in the adversary, I tried to persuade the debtors that the trustee

5  had the duty and the right to try to liquidate the trailer park.[5]  It is a fair reading of the entire

6  record in this case that debtors have unduly tried to impede the trustee in that duty.  Some

7  significant portion of the fees (at least Mr. Artus' fees) are due to their own dogged litigiousness.

8        At page 3 of their brief, debtors piously intimate the trustee's behavior cost the IRS about

9  $13,000.  The IRS, however, agreed to the sale of the property that the trustee ultimately arranged

10  with the debtors, in which the IRS agreed to release the balance of its lien.[6]  Had the trustee

11  abandoned his efforts, the IRS would have received no cash from the estate, and been relegated to

12  its precarious second lien position, and still had to deal with the debtors to turn its lien into cash.

13  The IRS obviously preferred the trustee's short sale to its incertain dealings with the debtors.

14        Finally, even the $100,000 offer, which was to pay junior liens, is not the same as the

15  $50,000 offer, under which debtors assumed these liens.

16  **"BODY OF ARGUMENT, I [UNTITLED]" (pages 4-6 of DN 180)**- Debtors argue the

17  trustee should be required to submit time records.   Rarely have I or Judge MacDonald required

18  this.  The local rules do not require it, as they do for attorneys.[7]

19

20

21

22

23        [4]See, Adv. No. A10-90009-HAR, Lashbrook v Barstow, Docket No. 1, Complaint, at ¶ 49.

24        [5]See, the court's comments at page 8-9, 23 of the transcript of a May 3, 2010 hearing in A10-90009-HAR, Lashbrook v Barstow, Docket No. 27.

25        [6]See, amended order of sale.  Docket No. 145.

26        [7]Alaska LBR 2016-1.

27

28  MEMORANDUM DECISION DENYING
DEBTORS' OBJECTION TO TRUSTEE'S FEES                                      Page 3 of 6

In re McKinney[8] does not require that a trustee file time records, but says the court "may" require them in an appropriate case.  It does not mean the court must apply a lodestar analysis, but merely to "accord some weight to time spent."  The court merely said it is not constrained by the BAPCPA addition of 11 USC § 330(a)(7) to treat the trustee's fee as a "commission," although that is how the statute literally reads.[9]

In discussing the amendment, *Colliers* says:

> The 2005 amendments changed the legal framework in two respects, by excluding chapter 7 trustees from the entities subject to the mandatory application of the factors listed in section 330(a)(3), and by providing that the compensation of a trustee is to be treated as a commission, based on the formulae in section 326(a). The primary effect of the change should be that, in the majority of cases, a trustee's allowed fee will be presumptively the statutory commission amount. [footnote omitted][10]

In our case, I will not use my discretion to require time records.  The equities favor the trustee, not the debtors.

**"II.  The trustee's compensation request should undergo a reasonableness standard in light of the facts of this case" (page 6-7) and "IV.  Because the trustee compensation is within the sound discretion of the court, the central inquiry becomes whether or not the trustee adminsterered the estate *efficiently*" (page 7-14 of DN 180)**- The debtors ask the court to review the performance of the trustee and cut his fee request.  The court declines.  The trustee is not the guarantor of success.  He should not be punished if his attempt to sell the trailer park proved more difficult or was less profitable than he hoped.  Especially, when the debtors were trying to sabotage his efforts at every step.[11]

---

[8] In re McKinney, 374 BR 726 (Bankr. N.D. Cal. 2007).

[9] *Id.*, at 730.

[10] *Collier on Bankruptcy*, ¶ 330.02[1][a].

[11] In re McCombs, 436 BR 421, 437-38 (Bankr. S.D. Tex. 2010).

The debtors rely heavily on <u>In re McCombs</u>.[12]  That case does not support their argument. The court found the trustee in that case performed appropriately, but only reduced an *interim* fee application to less than the statutory minimum because it would have been unfairly borne by one secured creditor, when in equity, the burden should have been split.  The court intimated that the temporarily disallowed portion could later be recovered from other assets.[13]

<u>McComb</u> also refutes an argument often made by debtors in this case, that no commission should be allowed if no unsecured creditors receive dividends:

> First, the statute itself does not state that the Trustee may receive a commission if, and only if, he disburses moneys to *unsecured* creditors. Just the contrary: the statute expressly qualifies the Trustee for a commission if he disburses moneys to *secured* creditors.  In fact, the only bar to the Trustee receiving a commission is when he disburses moneys to a debtor. The plain language of Section 326(a) states that a court may allow compensation "upon all moneys disbursed or turned over in the case by the trustee to parties in interest, *excluding the debtor*, but including holders of secured claims." (emphasis added). Indeed, "[t]he plain meaning of legislation should be conclusive, except in the rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters."  Because Section 326(a) expressly excludes debtors, and expressly includes parties in interest (a phrase which certainly includes unsecured creditors as well as secured creditors), there can be no doubt that this provision allows a trustee to qualify for compensation so long as that trustee has disbursed moneys to either unsecured creditors or secured creditors-or both. [citations omitted][14]

In this section of their brief, the debtors renew their attack on attorney William Artus' fees.  The court has previously ruled on that issue.

**"VI.  Trustee irresponsibly ignored the fact that the maximum probable recovery in this case could not possibly justify the huge tab he was running up between the management company, his attorney, and his own commission" (pages 15-17 of DN 180)**- The debtors quote the court's comment "if he had any common sense he'd probably have abandoned this and let you

---

[12] *Id.*

[13] *Id.*, at 441-42.

[14] *Id.*, at 436.

MEMORANDUM DECISION DENYING
DEBTORS' OBJECTION TO TRUSTEE'S FEES                                                                    Page 5 of 6

1 have the property." It was an attempt to make light of debtors' SOB litigation tactics and the fact

2 that administering the trailer park was a thankless task. I certainly did not agree with debtors

3 that the property, in fact, should have been abandoned. The fact that the trustee sold the

4 property belies that spin.

5      I tried to say the same thing in a hearing in the adversary proceeding a month before when

6 I told Ms. Lashbrook that "· · · I can almost guarantee you that this is sort of like a pain in the

7 butt, a trailer park - -."[15]

8      **"V.  Minor Issues which were ignored or glossed over by Trustee's Report include:" (pages**

9 **17-24 of DN 180)**- The trustee's calculation of his fees seems appropriate. The trustee did not

10 manipulate this case just to get a fee; rather, the debtors were not honest in their valuation of the

11 trailer park, and the trustee was justified in his actions. He deserves his full commission.

12

13      DATED:  June 3, 2011

14                                     /s/ Herb Ross

15                                   HERB ROSS
                           U.S. Bankruptcy Judge

16 <u>Serve</u>:
   Sandra Lashbrook, *pro se* debtor

17 Michael Lashbrook, *pro se* debtor
   Willilam Artus, Esq., for William Barstow, trustee

18 William Barstow, trustee
   Jeff Carney, Esq. (courtesy copy)

19 Kay Hill, Asst. US Trustee
   Cheryl Rapp, Deputy Clerk                          D7487

20

21      06/03/11

22

23

24

25

26      [15] *See*, the court's comments at page 14, lines 2-3 of the transcript of a May 3, 2010 hearing in A10-
90009-HAR, <u>Lashbrook v Barstow</u>, Docket No. 27.

27

28 MEMORANDUM DECISION DENYING
DEBTORS' OBJECTION TO TRUSTEE'S FEES                        Page 6 of 6